UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

FRED TIQUAN WILLIAMS,

        Petitioner,               Case No. 1:21-cv-385

v.                                           Honorable Jane M. Beckering

CONNIE HORTON,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Fred Tiquan Williams is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. On June 21, 2018, following a three-day jury trial in the Calhoun County Circuit Court, Petitioner was convicted of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b. On August 10, 2019, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to a prison term of 37 years, 6 months to 75 years. Petitioner's sentence is consecutive to sentences for which he was on parole at the time he committed the offense.

On May 7, 2021, Petitioner, with the assistance of counsel, filed his § 2254 petition. The habeas corpus petition raises one multi-part ground for relief, as follows:

    I.    Petitioner was denied the effective assistance of counsel, guaranteed by the federal constitution based upon trial counsel's assertion of a defense that was contrary to the testimony and defense of the defendant by (1) failing to question the complainant about a sexual encounter she had with a male other th[a]n the defendant, in the defendant's bed that day; (2) by failing to question an expert witness about the presence of a third contributor's DNA on the complainant, and how the defendant's DNA could have been easily transferred onto the complainant by her being in defendant's bed that day

>> with another man; (3) by failing to object to the inadmissible hearsay testimony of the serologist who was not called as a witness during the trial; (4) by failing to challenge the absence of any evidence of any signs of an injury-bruise, claimed by the complainant, that the defendant caused when he allegedly pulled her onto his bed to rape her; (5) by stating during closing argument that the defendant and the complainant had consensual sex; and, (6) by failing to object to testimony that the defendant was wearing a tether that day.

(Pet., ECF No. 1, PageID.3.) Respondent asserts that Petitioner's grounds for relief lack merit. (ECF No. 5.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, dismiss his petition for writ of habeas corpus.

## Discussion

### I.  Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's prosecution as follows:

>> On July 11, 2017, 14-year-old KG went to the home of her mother's 37-year-old ex-boyfriend. KG and her mother had a falling out and defendant texted KG stating that she could stay the night at his house if she needed. KG went to defendant's house in Battle Creek, Michigan, and she and defendant drank alcohol while watching television. KG testified that defendant told her to come over by him on the couch so he could tell her a secret. KG went over to defendant and he kissed her on the cheek. KG went into the bathroom because she felt uncomfortable. After a while, defendant came to check up on her and she left the bathroom. When she came out of the bathroom, defendant grabbed her by the wrists and pulled her into his bedroom, pushed her on the bed, pulled down her shorts, and penetrated her vagina with his penis. KG did not push defendant off of her because she was scared and defendant was bigger than her. KG reported the incident to a friend's mother, and then to the police.

(ECF No. 6-7, PageID.684.)

The jury heard testimony over the course of three days from numerous individuals, including the victim, the victim's mother, a sexual assault nurse examiner, the DNA analyst, law enforcement officials, and Petitioner himself. (ECF Nos. 6-3, 6-4.) The jury deliberated for a few

2

hours before reaching its verdict. (ECF No. 6-5.) Petitioner appeared before the court for sentencing on August 10, 2018. (ECF No. 6-6.)

Petitioner, with the assistance of the same counsel who represents him for purposes of his § 2254 petition, appealed his conviction and sentence, raising the same ineffective assistance of counsel issues he raises in this Court. On November 21, 2019, the Michigan Court of Appeals affirmed Petitioner's conviction and sentence. (ECF No. 6-7, PageID.684–688.) Petitioner, again with the assistance of counsel, then filed an application for leave to appeal to the Michigan Supreme Court. The Supreme Court denied leave by order entered May 26, 2020. (ECF No. 6-8, PageID.785.) This § 2254 petition followed.

## II.     AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III. Discussion

As noted above, Petitioner raises one multi-part ground for relief that includes six distinct claims of ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the

Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the

"Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

With respect to Petitioner's ineffective assistance claims, the court of appeals set forth the following standard of review:

> "Both the United States and Michigan constitutions provide that the accused shall have the right to counsel for his defense." *People v. Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009), citing US Const, Am VI; Const 1963, art 1, § 20. This right encompasses a defendant's right to effective representation. *Id.* However, it is the defendant's burden to prove that counsel did not provide effective assistance. *People v. Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018). To prove that defense counsel was not effective, the defendant must show that: (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant, i.e., that but for counsel's errors, the result of the proceeding would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 628, quoting *Strickland v. Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

(ECF No. 6-7, PageID.685.) Although the court of appeals cited state court authority for the standard, that authority—*Anderson*—directly quotes *Strickland* and sets forth a standard identical to that in *Strickland*. Thus, there is no question that the state court applied the correct standard. This Court, therefore, will consider whether the court of appeals' application of that standard was unreasonable with respect to Petitioner's multiple claims of ineffective assistance.

    **A.**    **Cross-Examination of Victim**

Petitioner first contends that counsel was ineffective for failing to question the victim about a sexual encounter that she had with another male that day in Petitioner's bed. (ECF No. 1, PageID.3.) "Decisions as to whether to call certain witnesses or what evidence to present are presumed to be matters of trial strategy, and the failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense." *Collins v. Berghuis*, No. 1:08-cv-369, 2011 WL 4346333, at *16 (W.D. Mich. Aug. 22,

2011) (citing *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004) and *Hutchison*, 303 F.3d at 749).

> The court of appeals rejected Petitioner's claim, stating:
>
> Defendant first claims that counsel was ineffective for failing to question KG about a purported sexual encounter that she had with another man at defendant's house on the night of the incident. We disagree.
>
> KG testified that defendant "pulled my shorts down and raped me." KG gave specific details about where and how the action occurred. The jury also heard a police officer testify that he interviewed defendant and that defendant first stated that KG never came to his house, then admitted she came to his house but did not come inside, and finally, that she went inside his house. Defendant testified that on July 11, 2017, he met KG in his driveway after she texted him and that he let her in the house. He then left. Defendant testified that when he returned, he saw KG drinking alcohol with a man on the couch, and then he saw KG having sex with the man in his bedroom.
>
> Defense counsel questioned KG about how much she had to drink and many other details regarding her testimony. However, he chose not to question KG about defendant's allegations. Defense counsel's decision not to confront KG was a matter of trial strategy. Whether KG had consensual sex with someone other than defendant on the night of the incident does not negate any possibility that defendant committed the crime of CSC I. Moreover, defense counsel's decision to not open the door to testimony concerning the inconsistencies in defendant's stories and not to give KG the opportunity to deny defendant's testimony was a reasonable choice of trial strategy. See *Rockey*, 237 Mich App at 76.

(ECF No. 6-7, PageID.685–686.)

Petitioner vaguely contends that trial counsel's failure to question KG about the other male deprived him of a defense. (ECF No. 1, PageID.20–21.) Counsel's decisions regarding how to cross-examine KG are matters of trial strategy, which are entitled to "great respect" by this Court. *See Glenn v. Sowders*, No. 85-5754, 1986 WL 18475, at *4 (6th Cir. 1986); *see also Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997) ("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."). While there may be room for improvement in cross-examination, were that to be "the standard of constitutional effectiveness, few would be the counsel whose performance [pass] muster."

*Henderson*, 118 F.3d at 1287 (quoting *Willis v. United States*, 87 F.3d 1004, 1006 (8th Cir. 1996)). Here, as the court of appeals correctly noted, had counsel questioned KG about Petitioner's belief that she had had consensual sex with another man that evening, and KG denied it, counsel would be highlighting the inconsistencies in Petitioner's statements. Counsel reasonably did not want to highlight such inconsistencies. Petitioner has not demonstrated that the court of appeals' determination regarding this ground for relief was contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief on this ground.

### B.    Cross-Examination of Expert Witness

Next, Petitioner contends that counsel was ineffective for not questioning an expert witness "about the presence of a third contributor's DNA on the [victim], and how the defendant's DNA could have been easily transferred onto the [victim] by her being in defendant's bed that day with another man." (ECF No. 1, PageID.3.) The court of appeals rejected Petitioner's claim, stating:

> Defendant next argues that defense counsel was ineffective for failing to argue that another male's DNA was found on KG's perianal/anal swab and for failing to question the DNA expert about how easily DNA can be transferred from one person [to] another. Preliminarily, defendant's argument fails because the expert testified extensively about how DNA is transferred from a person's body. She also testified about how each body is different and sheds cells at [] different rates, and how bodily fluids, including semen, contain more DNA than DNA left on the surface of something.
>
> Additionally, defendant's assertion that KG had DNA from another contributor on her swab misconstrues the testimony. The DNA expert testified that there was a minor contributor to a portion of KG's sample and that she could not determine who it was from because there was not enough DNA present. The expert did not testify that the sample contained DNA from another male; she simply testified that part of the sample was inconclusive. Defense counsel likely strategically did not want to highlight the testimony in order to leave open the opportunity for the jurors to infer that it was another man's DNA. And, despite defendant's assertion to the contrary, defense counsel asked the expert about the second contributor and the inconclusive results. He asked, "So you mean there wasn't enough DNA?" The expert testified, "Right, I—the DNA types weren't high enough for me to say that they came from Mr. Williams. Defense counsel followed up with, "So if I were to ask you was [defendant's] DNA found in sample number one, your answer would

> be 'no,' is that correct?" The expert replied, "Correct." Defense counsel's decision on how to question the witness was trial strategy. See *Rockey*, 237 Mich App at 76.

(ECF No. 6-7, PageID.686.)

The court of appeals correctly noted that Grace Bommarito, who analyzed the DNA samples, testified about how DNA is transferred from one individual to another and how certain factors, such as the surface of an object, have an effect on how much DNA is left behind. (ECF No. 6-4, PageID.407.) She noted that DNA from bodily fluids is "usually in a much higher quantity than if a person was just to touch an object." (*Id.*, PageID.408.) Moreover, counsel did question Ms. Bommarito on cross-examination about the fact that there was not enough DNA from the first sample for her to make a conclusive determination about the donor. (*Id.*, PageID.430.) Counsel highlighted that the source of that sample was the same as the source for the second sample. (*Id.*) Counsel's decisions on how to cross-examine Ms. Bommarito are entitled to "great respect" by this Court. *See Glenn*, 1986 WL 18475, at *4. Petitioner has not demonstrated that the court of appeals' determination regarding this ground for relief was contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief on this ground.

### C.    Failing to Object to Hearsay

Third, Petitioner asserts that counsel was ineffective for "failing to object to the inadmissible hearsay testimony of the serologist who was not called as a witness during the trial." (ECF No. 1, PageID.3.) Specifically, Plaintiff takes issue with Ms. Bommarito testifying "about a serology report, prepared by someone else, that allegedly indicated the possible presence of semen, or seminal fluid, and in essence equated the DNA she found on the perianal cutting, with the

10

possible presence of sperm or seminal fluid." (*Id.*, PageID.13.)[1] Petitioner contends that the serology report was not offered into evidence, nor was the serologist presented as a witness. (*Id.*)

The Supreme Court has never recognized that the Constitution is violated by the admission of unreliable hearsay evidence. *See Desai v. Booker*, 732 F.3d 628, 630–31 (6th Cir. 2013). While hearsay is not constitutionally impermissible, it does raise the specter of another issue, violation of the Sixth Amendment's Confrontation Clause, which provides the accused the right "to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

In rejecting this claim, the court of appeals stated:

---

[1] The entirety of the purportedly objectionable testimony elicited by the prosecutor is as follows: "The previous report that the serologist issued mentioned that there is the possible presence of seminal fluid . . . ." (ECF No. 6-4, PageID.413.) Defense counsel, however, elicited additional testimony regarding the serologist's report:

> Defense counsel: Because you testified on direct that you tested for seminal fluid, you also tested sperm. How do you make a determination of what the sample is that you tested?
>
> Expert witness: I actually did not test for seminal fluid. That was the person prior to me who issued a report stating that there is the possible presence of seminal fluid.

(*Id.*, PageID.427–428.) Thus, the only information disclosed regarding the non-testifying serologist's report is that there may have been seminal fluid on one of the swabs.

11

> Finally, defendant argues that counsel was ineffective for failing to object to the admission of the serology report when it constituted hearsay and violated his constitutional right to confrontation. This is the only claim for which defendant cited to relevant authority to support his position. Nonetheless, this claim fails.
>
> Hearsay is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. MRE 801(d). Here, the DNA expert testified that she personally conducted the DNA analysis and generated the serology report that was entered into evidence. She testified that the report relates only to what she did with respect to the case. The report was not, then, hearsay as defendant asserts, nor did it violate his right to confrontation given that defense counsel had the opportunity to cross-examine the DNA expert about her methods, findings, and report.
>
> Further, contrary to defendant's claim, the expert did not testify that the DNA she analyzed and found to match defendant's DNA came from semen. The expert testified that the serologist is the first person to get a piece of evidence and decides which piece of evidence would be best for DNA analysis. The serologist then takes a "cutting" from the evidence, such as a swab or item of clothing, and places it in a tube for the DNA expert's analysis. The DNA expert testified that, for this case, she received one item for DNA analysis from the serologist who suggested there was a "possible presence of seminal fluid" on the item. The DNA expert testified that, from the "sperm fraction or male fraction" of the sample, she was able to determine that it matched defendant's profile. Defendant does not contest the contents of the report and he has presented no meritorious argument that counsel was ineffective for failing to object to the admission of the report or the DNA expert's testimony.

(ECF No. 6-7, PageID.688.)

Even assuming that Ms. Bommarito's references to the serologist's report constitute hearsay and implicate the Confrontation Clause, Petitioner fails to show that any alleged Confrontation Clause violation had a "substantial and injurious effect or influence" on the verdict as required by *Brecht v. Abrahamson*, 507 U.S. 619, 627, 637 (1993). Ms. Bommarito referenced the serologist's report to explain how the evidence came to her for analysis and to explain why she performed a differential analysis. Nothing in the serologist's report, in particular the statement that there was a "possible presence of seminal fluid," implicated Petitioner in any way. Moreover, the actual presence of sperm cells in the sample confirmed the possibility identified by the serologist. But even the actual presence of sperm cells does not necessarily implicate Petitioner, it is Ms.

12

Bommarito's comparison of the DNA in the sample to Petitioner's DNA, and the likelihood that another person's DNA might have the same characteristics that is prejudicial to Petitioner. It is Ms. Bommarito's report, therefore, that is prejudicial to Petitioner. As the court of appeals correctly noted, Ms. Bommarito's report was admitted into evidence, and Petitioner had the opportunity to cross-examine her about her analysis and findings.

Petitioner simply has not shown more than a "reasonable probability" that the admission of Ms. Bommarito's testimony regarding the serologist's report was harmful. *Brecht*, 507 U.S. at 637 (internal quotation marks omitted). Thus, because any Confrontation Clause violation was harmless, counsel's failure to raise an objection cannot be prejudicial under *Strickland*. *See Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016) ("[T]he standard for prejudice under *Strickland* is more onerous than the *Brecht* standard . . . ."). Petitioner, therefore, is not entitled to relief on this ground.

### D.  Failing to Challenge the Absence of Evidence of Bruising

Next, Petitioner contends that counsel "fail[ed] to challenge the absence of any evidence of any signs of an injury-bruise, claimed by the [victim] that the defendant caused when he allegedly pulled her onto his bed to rape her." (ECF No. 1, PageID.3.)

In rejecting Petitioner's claim, the court of appeals stated:

> Defendant next argues that defense counsel was ineffective for not highlighting the lack of evidence that KG's wrists were bruised or otherwise injured. We disagree.
>
> Defendant was charged with CSC-I, an element of which is that "[t]he actor causes personal injury to the victim . . . ." See MCL 750.520b(1)(f). Presumably, defendant is arguing that a lack of bruising on KG's wrists would aid his case because it would make it harder for the prosecutor to prove this element. However, KG testified that defendant pulled her by her wrists into the bedroom, that he pushed her onto the bed, that her wrists hurt afterward, that she had a bruise on her wrist, and also that she had vaginal bleeding and experienced a lot of pain in her vagina for several days after the assault. The examining nurse corroborated this testimony by stating that she saw bruising on KG's wrists and that KG reported to her that she had bleeding and was experiencing a lot of pain in her vagina. There was thus sufficient

13

> evidence from which the jury could conclude beyond a reasonable doubt that defendant injured KG. Moreover, it was a reasonable trial strategy for trial counsel to avoid engaging in a more lengthy cross-examination of KG or the nurse on this topic, a conversation that could have brought *more* attention to the testimony concerning KG's injuries and pain.

(ECF No. 6-7, PageID.686–687.)

Petitioner suggests that "trial counsel failed to question the sexual assault nurse practitioner as to why if she observed a bruise on the [victim's] wrist, she did not take a photograph of it which was her normal practice." (ECF No. 1, PageID.22.) As noted above, however, counsel's decisions regarding cross-examination are entitled to "great respect." *See Glenn*, 1986 WL 18475, at *4. Had counsel done so, as the court of appeals noted, he would have been calling more attention to the testimony regarding the victim's injuries. Petitioner has not demonstrated that the court of appeals' determination regarding this ground for relief was contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief on this ground.

### E. Statements During Closing Arguments

Fifth, Petitioner argues that counsel was ineffective when he stated, during closing arguments, that he and the victim had consensual sex. (ECF No. 1, PageID.3.) During closing arguments, counsel stated, "I guess there's an argument that could be made that [KG] was exaggerating what happened and making it worse than it really was and that it's possible that she and [Petitioner] had voluntary sex and she doesn't want to admit it." (ECF No. 6-4, PageID.624.)

In resolving Petitioner's claim, the court of appeals stated:

> Defendant next argues that defense counsel went against his defense strategy by suggesting in closing arguments that KG and defendant had consensual sex. In his brief, defendant does not cite to the specific portion of the record wherein counsel made such a suggestion. See MCR 7.212(C)(7) ("Facts stated must be supported by specific page references to the transcript, the pleadings, or other document or paper filed with the trial court."). We surmise that defendant is referring to counsel's statement that, "I guess there's an argument that could be made that [KG] was exaggerating what happened and making it worse than it really was and that it's possible that she and [defendant] had voluntary sex and she doesn't want to admit

14

> that. That would be CSC three. Even [the prosecutor] tells [the jury] she doesn't believe that, so I'm—I'm not going to belabor the point." The remainder of defense counsel's closing argument was in agreement with defendant's stated defense strategy.
>
> KG testified that a sexual act transpired between her and defendant. Further, defendant's DNA was found on the perianal/anal swab of KG, which is a small, intimate area of her body. In the face of significant evidence that a sexual encounter with defendant occurred, defense counsel's single statement in closing argument to suggest a consensual interaction indicates a strategic attempt (albeit it an incorrect one[1]) to allow the jury to convict defendant of a lesser-included offense. While use of this statement may have been below an objective standard of reasonableness, given the evidence presented at trial, even absent this fleeting statement by defense counsel, there is no reasonable probability that the result of the proceeding would have been different.
>
> [1] The 14-year-old victim was not old enough to give consent to sexual intercourse with defendant. See MCL 750.520b(1)(b).

(ECF No. 6-7, PageID.687.)

Petitioner provides no reason for this Court to question the court of appeals' conclusion. Even if a court determines that counsel's performance was outside the range of reasonable performance, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Strickland*, 466 U.S. at 691. When considering *Strickland*'s prejudice prong, the court "must consider the totality of the evidence before the judge or jury." *Id.* at 695. Thus, "the prejudice determination is necessarily affected by the quantity and quality of other evidence against the defendant." *Hodge v. Hurley*, 426 F.3d 368, 376 n.17 (6th Cir. 2005). The court of appeals correctly concluded that no prejudice resulted from counsel's statement. The evidence provided by the victim, corroborated by the testimony of other witnesses—particularly the DNA evidence and evidence that Petitioner had provided inconsistent statements during his interview by police—strongly supported Petitioner's conviction such that counsel's statement could not possibly have resulted in any different outcome. Petitioner has not demonstrated that the court of appeals'

15

determination regarding this ground for relief was contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief on this ground.

### F.    Tether Testimony

Finally, Petitioner contends that counsel was ineffective for failing to object to "testimony that [he] was wearing a tether that day." (ECF No. 1, PageID.3.) Erin Deloof, a State employee, testified that at the time of the incident, she was monitoring Petitioner with a tether, a "GPS tracking device that [is placed] on the ankle of somebody so we know where their whereabouts are at all times." (ECF No. 6-4, PageID.472–473.) Deloof testified that Petitioner was at home by 5:45 p.m. and left again at 6:07 p.m. (*Id.*, PageID.475.) Petitioner came back home around 6:24 p.m. and stayed there. (*Id.*, PageID.476.)

The court of appeals rejected this claim, stating:

> Next, defendant claims that defense counsel was ineffective for failing to object to the introduction of the evidence that he was on a tether at the time of the charged offense because the evidence was not relevant and any probative value was substantially outweighed by the unfair prejudice to defendant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. While we do somewhat question the relevancy of this evidence, defendant did initially tell police that KG was not at his home and that he had run some errands that day. The tether evidence showed defendant's locations on the date of the incident and thus showed he had the opportunity to commit the CSC-I at the time KG stated the incident occurred. Moreover, it is not apparent that the jury gave the fact that defendant was on a tether undue weight, or that the evidence affected the outcome of the trial, particularly where the jury was not advised why defendant was on a tether. The evidence related to the tether not being outcome determinative, it forms no basis for a new trial.

(ECF No. 6-7, PageID.687–688.)

Petitioner suggests that this "evidence was not relevant, and any probative value was substantially outweighed by the unfair prejudice that most definitely resulted, leaving the jury to conclude that the Defendant was a bad person, and had committed other crimes." (ECF No. 1, PageID.23.) As noted above, it is not the province of a federal habeas court to re-examine state

16

law determinations on state-law questions. *See Estelle*, 502 U.S. at 67–68. The Sixth Circuit has repeatedly recognized "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)). The court of appeals' determination that the testimony regarding the tether was admissible is, therefore, axiomatically correct on habeas review. Thus, because the state court acted properly in admitting this testimony, any challenge to it by counsel would have been meritless. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

The court of appeals also determined that the admission of this testimony was not "outcome determinative." The Michigan Supreme Court equates "outcome determination" to "prejudice" when separating plain from harmless error, *People v. Vaughn*, 821 N.W.2d 288, 303 (Mich. 2012), and when evaluating the *Strickland* standard for ineffective assistance of counsel, *People v. Harris*, 840 N.W.2d 307, 308 (Mich. 2013).

The impact of an error on the outcome of the proceedings is also the focus of federal harmless error analysis. *See, e.g.*, *Brecht*, 507 U.S. at 623 (adopting as the standard for determining whether habeas relief if appropriate "whether the . . . error 'had substantial and injurious effect or influence in determining the jury's verdict.'"); *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (posing the question as "'Do I, the judge, think that the error substantially influenced the jury's decision?'"); *Brown v. Davenport*, __ S.Ct. __, 2022 WL 1177498, at *5 (Apr. 21, 2022) (stating "a state prisoner . . . must show that the error had a 'substantial and injurious effect or influence' on the outcome of his trial."). The appellate court's decision that the error was not outcome

17

determinative, a determination to which this Court must defer,[2] is the equivalent of a determination that the error was harmless under *Brecht*. *Kyles v. Whitley*, 514 U.S. 419, 435–36 (1995). The determination that any error was harmless under *Brecht* necessarily means that it is not prejudicial under *Strickland*. *See Kyles*, 514 U.S. at 436 (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976), materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing of harm than is necessary to overcome the harmless error test of *Brecht*); *see also Wright*, 665 F. App'x at 410 ("[O]ur previous analysis of *Strickland* prejudice applies to the assessment of whether the Confrontation Clause violation was harmless error under *Brecht*."); *Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004) ("Because we find the error to be harmless [under *Brecht*] Bell cannot meet the prejudice requirement of *Strickland*. . . ."); *Kelly v. McKee*, No. 16-1572, 2017 WL 2831019 at *8 (6th Cir. Jan. 24, 2017) ("Because Kelly suffered harmless error [under *Brecht*] at best, he cannot establish that he suffered prejudice [under *Strickland*]."). Thus, once the Court defers to the determination that any error was not outcome determinative, it necessarily follows that Petitioner cannot establish prejudice under *Strickland* for counsel's failure to challenge the testimony regarding the tether.

## IV.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

---

[2] *Brown* states that "a state court's harmless-error determination qualifies as an adjudication on the merits under AEDPA." 2022 WL 1177498 at *6. Accordingly, the Court must defer to that adjudication under § 2254(d)(1) unless the "petitioner persuades [the Court] that no 'fairminded juris[t]' could reach the state court's conclusion under [the Supreme] Court's precedents." *Id.* at *9. This is a standard that is intentionally difficult to meet. *See Woods*, 575 U.S. at 316.

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:  May 20, 2022                               /s/ Jane M. Beckering
                                                                   Jane M. Beckering
                                                                   United States District Judge